# EXHIBIT A



**null / ALL**
**Transmittal Number: 16744640**
**Date Processed: 06/09/2017**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Ms. Mona Cohen<br>Assurant<br>11222 Quail Roost Drive<br>Miami, FL 33157-6596 |

| | |
|---|---|
| **Entity:** | Federal Warranty Service Corporation<br>Entity ID Number  0439523 |
| **Entity Served:** | Federal Warranty Service Corporation |
| **Title of Action:** | Rose M. Woturski vs. Federal Warranty Service Corporation |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Class Action |
| **Court/Agency:** | Cape May County Superior Court, New Jersey |
| **Case/Reference No:** | CAM-L-199-17 |
| **Jurisdiction Served:** | New Jersey |
| **Date Served on CSC:** | 06/09/2017 |
| **Answer or Appearance Due:** | 35 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Lewis G. Adler<br>856-845-1968 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscglobal.com

Lewis G. Adler, Esquire
ID No. 023211985
26 Newton Avenue
Woodbury, New Jersey 08096
(856) 845-1968
Lead Counsel for the Plaintiff



**DULY SERVED**

DATE _6 - 9 - 1 7_
John A. Kemler, Sheriff
BY _____
~~Special Deputy~~

Law Office of Paul DePetris
Paul DePetris
ID No. 005821996
532 Route 70 West, 2nd Floor
Cherry Hill, New Jersey 08002
(609) 714-2020

| | |
|---|---|
| Plaintiff | : SUPERIOR COURT OF NEW JERSEY |
| | : LAW DIVISION |
| Rose M. Woturski, individually and on | : CAPE MAY COUNTY |
| on behalf of others similarly situated | : |
| | : |
| | : |
| | : |
| vs. | : |
| | : DOCKET NO.: L-199-17 |
| Defendant | : |
| | : CIVIL ACTION |
| Federal Warranty Service Corporation | : |
| | : **SUMMONS** |
| | : |

*From The State of New Jersey To The Defendant(s) Named Above: Federal Warranty Service Corporation*

     The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for the lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the [Clerk of the Superior Court] Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named

above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.


Dated: 6 / 06 / 17

/s/ Michelle M. Smith
CLERK, SUPERIOR COURT OF NEW JERSEY

*Name of defendant to be served:*
*Address for Service:*

*Federal Warranty Service Corporation*
Princeton South Corporate Center
100 Charles Ewing Blvd., Suite 100
Ewing, New Jersey 08628

```
CAPE MAY COUNTY DN - 203
SUPERIOR COURT
9 NORTH MAIN STREET
CAPE MAY CRT HSE NJ 08210-3096
                                    TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (609) 463-6514
COURT HOURS  8:30 AM - 4:30 PM
```

```
                        DATE:   MAY 15, 2017
                        RE:     WOTURSKI ET AL VA FEDERAL WARRANTY SERVICE
                        DOCKET: CPM L -000199 17
```

     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 2.

     DISCOVERY IS   300 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

     THE PRETRIAL JUDGE ASSIGNED IS:  HON JSC J CHRISTOPHER GIBSON

     IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      001
AT:  (609) 463-6514.

     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                    ATTENTION:
                              ATT: LEWIS G. ADLER
                              LEWIS G. ADLER
                              26 NEWTON AVENUE
                              WOODBURY         NJ 08096

JUCKS2

**LEWIS G. ADLER, ESQ.**
Attorney ID#:  023211985
26 Newton Ave.
Woodbury, NJ 08096
Tel. #:  (856) 845-1968
Fax #:  (856) 848-9504
Email:  lewisadler@verizon.net
Co-counsel for plaintiffs

**LAW OFFICE OF PAUL DEPETRIS**
Paul DePetris
Attorney ID #:  005821996
532 Route 70 West, 2nd Flr.
Cherry Hill, NJ 08002
Tel. #:  609-714-2020
Email:  paul@newjerseylemon.com
Co-counsel for plaintiffs

FILED

MAY 1 2 2017

CIVIL DIVISION
SUPERIOR COURT-CAPE MAY COURT

| | |
|---|---|
| ROSE M. WOTURSKI, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED,<br><br>PLAINTIFFS[1],<br>V.<br>FEDERAL WARRANTY SERVICE CORPORATION,<br><br>DEFENDANTS. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION, CIVIL PART CAPE MAY COUNTY<br><br>DOCKET NO.  *CPM - L - 199 - 17.*<br><br><br>**COMPLAINT** |

Plaintiffs, by way of complaint against defendants, say/says:

### ABBREVIATIONS

1.  For brevity's sake, hereafter plaintiffs shall use the following abbreviations:

| Original Term | Abbreviation |
|---|---|
| Plaintiffs ROSE M. WOTURSKI (collectively if there is more than one plaintiff) | Plaintiffs |
| Defendants FEDERAL WARRANTY SERVICE CORPORATION (collectively, if there is more than one defendant) | Defendants |

---

[1] As used in this document, use of the plural includes the singular, where applicable.  The parties are referred to in the plural regardless of their actual number.

| Plaintiffs and defendants collectively | The parties |
|---|---|
| Plaintiffs' Complaint Filed In This Case | The Complaint |
| The Instant Civil Action | This Case Or The Case |
| The Members Of The Putative Class Identified Below In The Class Action Certification Allegations | The class members or the class |
| The Class Action Fairness Act, 28 U.S.C. § 1332 | CAFA |
| The New Jersey Truth-In-Consumer Contract, Warranty And Notice Act, N.J.S.A. 56:12-14 To -18 | TCCWNA |
| N.J.S.A. 56:12-15 | Section 15 |
| N.J.S.A. 56:12-16 | Section 16 |
| New Jersey Uniform Commercial Code, N.J.S.A. 12A:1-101, et seq. | The UCC |
| The New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, Et Seq. | CFA |
| N.J.S.A. 56:8-2 | Section 2 |
| New Jersey Division Of Consumer Affairs | DCA |
| New Jersey Household Furniture And Furnishings Regulations, N.J.A.C. 13:45A-5.1 to -5.4 | HFR |
| An Act Concerning Service Contracts And Supplementing And Amending P.L.1980, C.125; the Service Contracts Act, N.J.S.A. 56:12-87, et seq. | SCA |
| The appliances/machines that plaintiffs purchased from the store and that are covered by the service contract– a General Electric Profile 24 inch fully integrated dishwasher, a General Electric 30 inch slide-in gas range, a General Electric over the range microwave and a General Electric French door refrigerator collectively | The appliance |
| Plaintiffs' residence to which the store delivered the appliance - 2708 Bybrook Drive, Villas, Cape May County, New Jersey 08251 | The property or the house |
| The sales contract issued to plaintiffs relative to the sale of the appliance | The sales contract |
| The service contract that defendants issued to plaintiffs and that is the subject of this dispute | The service contract or the contract |
| Johnson's Appliances & Bedding D/B/A Johnson's Electric And D/B/A Johnson's Electric, Appliances & Bedding's retail store located at 2510 New York Avenue, North Wildwood, New | The store |

| Jersey 08260 from which plaintiffs purchased the appliance | |
| The sale of the service contract to plaintiffs | The sale |

## EXHIBITS REFERENCED IN COMPLAINT

2. Plaintiffs repeat all of the allegations contained in the previous paragraphs as if fully set forth herein.

3. Hereafter, plaintiffs shall rely upon and refer to the following exhibits attached to the complaint:[2]

   1) Sales contract dated 8-19-14.

   2) Service contract #361450726.

4. All references herein to exhibits shall be to those listed above.

## PARTIES

5. Plaintiffs repeat all of the allegations contained in the previous paragraphs as if fully set forth herein.

6. Plaintiffs are individual persons residing at 2708 Bybrook Drive, Villas, Cape May County, New Jersey 08251.

7. Defendants are businesses with an address of 260 Interstate N. Circle S.E., Atlanta, Georgia 30339.

## FACTUAL ALLEGATIONS

### The Sale Of The Appliance And Service Contract

8. Plaintiffs repeat all of the allegations contained in the previous paragraphs as if fully set forth herein.

---

[2]Where necessary to comply with R. 1:38-7, et seq. and/or R. 4:5-1, et seq., exhibits may be redacted to omit personal confidential identifying information. Where indicated, exhibits may be but portions of the documents identified.

9.  On or about 8-19-14, plaintiffs purchased the appliance from the store. Exhibit 1.

10. Plaintiffs purchased the appliance primarily for personal, family or household purposes – i.e., for use at the property which is plaintiffs' residence. Exhibit 1.

11. When purchased, the appliance was new. Exhibit 1.

12. The appliance's purchase price with taxes was $6,788.40. Exhibit 1.

13. The appliance was to be delivered to the property - plaintiffs' residence - on or before 8-28-14. Exhibit 1.

14. Defendants delivered the appliance to the property.

15. Plaintiffs also purchased the service contract for a price of $266.55. Exhibit 2.

16. The service contract refers to an "Install Date" of 9-30-14 and a "Coverage Period" of 10-2-16 to 10-2-17. Exhibit 2.

17. At all times hereto, defendants acted as the obligor and/or administrator of service contracts and was a seller and/or issuer of service contracts. Exhibit 2, §1.

### The Truth-In-Consumer Contract,

### Warranty And Notice Act Generally

18. The TCCWNA is a remedial consumer statute and by passing it, the Legislature's intent was to expand rather than constrict the consumer's rights.[3]

19. The TCCWNA's legislative history states, in pertinent part: "Far too many consumer contracts, warranties, notices and signs contain provisions which

---

[3]See, e.g. *Reves v. Ernst Young*, 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993)(discussing Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c)); *Perez v. Rent-a-Center, Inc.*, 186 N.J. 188, 892 A.2d 1255 (2006) (noting that remedial statutes like the Retail Installment Sales Act ("RISA"), N.J.S.A. 17:16C-1 to -61 should be liberally construed  to achieve their salutary aims).

clearly violate the rights of consumers. Even though these provisions are legally invalid or unenforceable, their very inclusion in a contract, warranty, notice or sign deceives a consumer into thinking that they are enforceable and for this reason the consumer often fails to enforce his rights." A-1660, p. 2 (as introduced May 1, 1980).

20. Moreover, the sponsor's statement in the TCCWNA's legislative history states that the Legislature enacted TCCWNA to strengthen the CFA.[4]  Sponsor's Statement to A-1660 (as introduced May 1, 1980).

21. Therefore, the TCCWNA's scope is best understood in its relation to other consumer protection statutes such as the CFA. The TCCWNA's legislative history speaks of holding all businesses liable for violations: "This bill prohibits businesses from offering or using provisions in consumer contracts, warranties, notices and signs that violate any clearly established right of a consumer." A-1660, p. 3 (as introduced May 1, 1980).

22. The TCCWNA is a cumulative statute rather than an exclusive one: "The rights, remedies and prohibitions accorded by the provisions of this act are hereby declared to be in addition to and cumulative of any other right, remedy or prohibition accorded by common law, Federal law or statutes of this State, and nothing contained herein shall be construed to deny, abrogate or impair any such common law or statutory right, remedy or prohibition." N.J.S.A. 56:12-18;

---

[4]When interpreting a statute, the Court considers the entire legislative scheme of which the statute under review is a part. *Kimmelman v. Henkels & McCoy, Inc.*, 108 N.J. 123, 129 527 A2d 1368 (1987).  "Of the various materials that may reveal legislative intent, one of the most instructive is a statement by the sponsor of the act." *Panzino v. Cont'l Can Co.*, 71 N.J. 298, 302,  364 A.2d 1043 (1976).

*Shelton v. Restaurant.com, Inc.*, 214 N.J. 419, 427 (2013)(citing N.J.S.A. 56:12-18).

23. The TCCWNA states, in pertinent part: "Consumer contract, warranty, notice or sign; violation of legal right of consumer or responsibility of seller, lessor, etc.; prohibition; exemptions[.]   No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed. Consumer means any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes. The provisions of this act shall not apply to residential leases or to the sale of real estate, whether improved or not, or to the construction of new homes subject to 'The New Home Warranty and Builders' Registration Act,' P.L.1977, c. 467 (C. 46:3B-1 et seq.)." N.J.S.A. 56:12-15.

24. The TCCWNA states, in pertinent part: "56:12-16 Provision for waiver of rights under act; nullity; statement of provisions void, unenforceable or inapplicable in New Jersey[.] No consumer contract, warranty, notice or sign, as provided for in this act, shall contain any provision by which the consumer waives his rights under this act. Any such provision shall be null and void. No consumer contract,

notice or sign shall state that any of its provisions is or may be void, unenforceable or inapplicable in some jurisdictions without specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey; provided, however, that this shall not apply to warranties." N.J.S.A. 56:12-16.

25. The TCCWNA states, in pertinent part: "Any person who violates the provisions of this act shall be liable to the aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages, or both at the election of the consumer, together with reasonable attorney's fees and court costs. This may be recoverable by the consumer in a civil action in a court of competent jurisdiction or as part of a counterclaim by the consumer against the seller, lessor, creditor, lender or bailee or assignee of any of the aforesaid, who aggrieved him." N.J.S.A. 56:12-17; *Shelton v. Restaurant.com, Inc.*, 214 N.J. 419, 427 (2013)(citing N.J.S.A. 56:12-17).

26. Under TCCWNA, "aggrieved" means that "a seller, lessor, creditor, lender or bailee offer[ed] to any consumer or prospective consumer or enter[ed] into any written consumer contract or give[s] or display[s] any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed." N.J.S.A. 56:12-15; N.J.S.A. 56:12-17.

27. A consumer is "aggrieved" by the aforesaid misconduct on defendants' part because it is defendants' displaying or offering or entering into the contract – the clause of which includes one or more provisions which violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed - that causes plaintiffs to be "aggrieved consumers" under the TCCWNA.

28. TCCWNA defines "consumer" as follows: "[c]onsumer means any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes." N.J.S.A. 56:12:16.

29. As Congress did by enacting the Fair Debt Collection Practices Act, via TCCWNA, the New Jersey Legislature decided to declare penalties for certain misconduct committed by merchants without proof of actual losses on the consumer's part.

30. Therefore, when establishing a violation of TCCWNA, the claimant need not prove actual damages but only that "a contract or notice simply contains a provision prohibited by state or federal law . . . ." See *Barrows v. Chase Manhattan Mortgage Corp.*, 465 F. Supp. 2d 347, 362 (D.N.J. 2006).   For, the NJTCCA provides that any person who violates the act "shall be liable to the aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages, or both at the election of plaintiffs, together with reasonable attorney's fees and court costs." N.J.S.A. 56:12-17.

**The Truth-In-Consumer Contract,**

**Warranty And Notice Act's Application To The Sale**

31. Plaintiffs purchased the appliance – movable goods sold at retail to plaintiffs - primarily for personal, family or household purposes.

32. The appliance and the contract are each a "property or service which is primarily for personal, family or household purposes."  N.J.S.A. 56:12:16.

33. Defendants sold the service contract to plaintiffs and therefore, acted towards plaintiffs as a seller.

34. Therefore, plaintiffs is/are a "consumer" as defined by N.J.S.A. 56:12-15, defendants is/are sellers as defined by N.J.S.A. 56:12-15 (see also N.J.A.C. 13:45A-17.2) and the contract is a written consumer contract subject to the TCCWNA.  N.J.S.A. 56:12-15.

35. As discussed more fully below, defendants, as a seller, creditor and/or lender, in the course of defendants' business, offered to plaintiffs – a consumer – and entered into with plaintiffs – a consumer – the contract and gave or displayed a written consumer notice or sign after the effective date of the TCCWNA which included a provision and/or provisions that violates any clearly established legal right of plaintiffs - a consumer - or responsibility of defendants - a seller, creditor and/or lender - a seller, creditor and/or lender - as established by State law (the HFR and the SCA) at the time the offer was made and/or the consumer contract was signed.

36. Plaintiffs are "aggrieved" consumers because defendants - "a seller, lessor, creditor, lender or bailee offer[ed] to" plaintiffs - a consumer – and "enter[ed] into

any written consumer contract" with plaintiffs and gave plaintiffs a written

consumer notice after TCCWNA's effective date and the contract and notice

included any provision that violates any clearly established legal right of a

consumer or responsibility of a seller, lessor, creditor, lender or bailee as

established by State or Federal law at the time the offer is made or the consumer

contract is signed or the warranty, notice or sign is given or displayed." N.J.S.A.

56:12-15; N.J.S.A. 56:12-17.

37. Given all of the above, the TCCWNA applies to the sale.[5]

## The Service Contract Act Generally

38. On 1-17-14, the Legislature enacted the SCA and it was slated to take effect 180

days following such enactment or on or about 7-16-14.

39. The SCA "regulates the sale and implementation of certain service contracts for

the repair, replacement, maintenance or service of properly used for personal,

family or household purposes." Assembly Consumer Affairs Committee

Statement to Assembly No.1740, available at

**http://wwwnjleg.state.nj.us/2012/Bills/A2000/1714.0PDF.**

40. The SCA states, in part: "Service contracts may be issued, offered for sale, or

sold in this State only in accordance with the provisions of this act." N.J.S.A.

56:12-88.

---

[5]"[T]he statute applies to more than merely contracts, but also to warranties, notices or signs." *DeHart v. US Bank, N.A.*, 811 F.Supp.2d 1038 (D.N.J., 2011).

41. The MMWA defines "service contract" as a "contract in writing to perform, over a fixed period of time or for a specified duration, services relating to the maintenance or repair (or both) of a consumer product. 15 U.S.C.S. 2301(8).

42. According to the FTC Business Center, "a service contract is not a warranty as defined by federal law." Auto Service Contracts and Warranties, available at **http://www.consumer.ftc.gov/articles/0054-auto-service-contracts-and-warranties.**

43. The SCA defines "consumer" as follows: "'Consumer' means a natural person who buys other than for purposes of resale any property that is distributed in commerce and that is normally used for personal, family, or household purposes and not for business or research purposes." N.J.S.A. 56:12:87.

44. Plaintiffs is/are consumers as defined by the SCA.

45. The SCA defines "service contract" as follows: "'Service contract' means a contract or agreement between a provider and a consumer for any duration, for a provider fee or other separately stated consideration, to perform, or to provide indemnification for the performance of, the maintenance, repair, replacement, or service of property for the operational or structural failure of the property due to a defect in materials or workmanship or due to normal wear and tear, and which may include additional provisions for incidental payment of indemnity under limited circumstances. In the case of a motor vehicle, such circumstances may include towing, rental, and emergency road services, and other road hazard protections. A service contract may provide for the maintenance, repair, replacement, or service of the property for damage resulting from power surges

or interruption, or accidental damage from handling. A service contract also includes a motor vehicle ancillary protection product. Service contracts may provide for leak or repair coverage to house roofing systems. A 'service contract' does not include a contract in writing to maintain structural wiring associated with the delivery of cable, telephone, or other broadband communication services or a contract in writing related to the delivery of satellite television or broadband communication services." N.J.S.A. 56:12:87.

46. The SCA applies to service contracts on property if the property for which the service contract is sold has a purchase price of over $250, excluding sales tax.

47. Here, the appliance's price was over $250.  Exhibit 1.

48. The service contract is a service contract as defined by the SCA.  Exhibit 2.

49. The SCA defines "warranty" as follows:  Warranty" means a warranty made solely by the manufacturer, importer, or seller of property or services without additional consideration, that is incidental to, and not negotiated or separated from, the sale of the property or services, that guarantees indemnity for defective materials, parts, mechanical or electrical breakdown, labor, or workmanship, or provides other remedial measures, including repair or replacement of the property or repetition of services." N.J.S.A. 56:12:87.

50. The service contract is not a warranty as defined by the SCA.  Exhibit 2.

51. The SCA defines "service contract holder" or "contract holder" as follows: "'Service contract holder' or 'contract holder' means a consumer who is the purchaser of a service contract or is entitled to the contractual benefits under the terms of the contract. N.J.S.A. 56:12:87.

52. Plaintiffs is/are service contract holders and/or contract holders as defined by the SCA. Exhibit 2.

53. The SCA states, in part: "A service contract issued, offered for sale, or sold in this State shall be written in a simple, clear, understandable, and easily readable way and shall contain the requirements set forth in this section, as applicable: a. the provider's name, principal or other appropriate business address, and telephone number; b. the administrator's name, principal or other appropriate business address, and telephone number; e. the property subject to coverage by the service contract, the contractual obligations of the provider with respect to that property, any limitations, exceptions, and exclusions, a tollfree telephone number for claim service, and complete instructions for making a claim for service on or replacement of the property covered by the contract, or for reimbursement for service on or replacement of the property;...k. the conditions governing the cancellation of the service contract by the service contract holder, which shall: (1) permit the contract holder, if the contract holder makes no claim arising under the contract, to cancel the contract: (a) within 10 days of receipt of the contract, or a longer period specified in the contract, if delivered at the time of purchase; or (b) within 20 days of the date the contract was sent to the contract holder, or a longer period specified in the contract, if not delivered at the time of purchase; and (2) if cancelled within the time period specified in subparagraph (a) or (b) of paragraph (1) of this subsection, require the provider to provide the contract holder with the full purchase price or amount paid on the contract by refund or credit to the account of the contract holder, and to additionally pay the

contract holder a 10% per month penalty, based upon the purchase price of the contract, if the refund or credit is not completed within 45 days of the cancellation of the contract; l. the conditions governing cancellation of the service contract by the provider, prior to the expiration of the contract, which shall: (1) require, except as provided in paragraph (2) of this subsection, that the provider mail a written notice to the contract holder at the contract holder's last known address: (a) which contains the reason for the cancellation and the effective date of the cancellation; and (b) is delivered at least five days prior to the effective date of the cancellation; and (2) explain that a written notice shall not be required if the reason for cancellation is nonpayment of the provider fee, a material misrepresentation or omission, or a substantial breach of contractual obligations concerning the property or its use.... N.J.S.A. 56:12-93.

54. N.J.S.A. 56:12-94 states: "Receipt, copy of service contract. A service contract shall not be issued, offered for sale, or sold in this State unless the provider or seller, if not the provider, presents: a. a receipt for, or other written evidence of, the purchase of the service contract to the contract holder; and b. a copy of the service contract to the service contract holder, which may be presented electronically or in writing, at the point of sale or within a reasonable period of time from the date of purchase."

55. N.J.S.A. 56:12-94 states: "In addition to any applicable damages and penalties pursuant to subsection a. of section 10 of P.L.2013, c.197 (C.56:12-96), a person who sells a service contract that is not in compliance with P.L.2013, c.197 (C.56:12-87 et al.) or that is issued by a provider that is not in compliance with

P.L.2013, c.197 (C.56:12-87 et al.) shall be jointly and severally liable for all covered contractual obligations arising under the terms of such contract or any service contract sold at a time when the provider of the contract is non-compliant."

56. Certain statutes outside the CFA include clauses that impose per se CFA violations, making merchants strictly liable for noncompliance.[6]  For example, the CFA empowers the attorney general to "promulgate such rules and regulations" necessary to accomplish the CFA's objectives.[7]  The SCA is one such statute.

57. Intent to violate the CFA is not a prerequisite to liability for such per se violations.[8] The parties subject to the CFA subsections and regulations are assumed to be familiar with them.[9] A merchant's subjective good faith does not excuse technical noncompliance with CFA statutory subsections and administrative regulations.[10]

58. N.J.S.A. 56:12-96(a) states: "Violations deemed unlawful practice.  a. A violation of any of the provisions of this act shall be an unlawful practice and a violation of P.L.1960, c.39 (C.56:8-1 et seq.)."

**Facts Supporting Defendant's Violation Of The**

**Truth-In-Consumer Contract, Warranty And Notice Act**

---

[6]. Fenwick v. Kay Am. Jeep, Inc., 72 N.J. 372, 378 (1977).

[7]. N.J.S.A. 56:8-4; Barry v. Arrow Pontiac, Inc., 100 N.J. 57, 70 (1985).

[8]. Artistic Lawn & Landscape Co., Inc. v. Smith, 381 N.J. Super. 75, 80 (Law Div. 2005).

[9]. Cox v. Sears Roebuck & Co., 138 N.J. 2, 18-19 (1994).

[10]. Truex v. Ocean Dodge, Inc., 219 N.J. Super. 44, 49 (App. Div. 1987).

**Predicated On The Language Of The Service Contract**

**That Violates The Service Contract Act**

59. The sale occurred on or about 8-19-14 and therefore, after the SCA took effect, which occurred on or about 7-16-14.  Exhibits 1 & 2.

60. In connection with the sale, defendants issued plaintiffs the contract as aforesaid.

61. Plaintiffs purchased the appliance with its service contract which are respectively property and a service which are primarily for personal, family or household purposes."  N.J.S.A. 56:12:16.

62. The service contract does not contain any sections discussing New Jersey law or details about consumer rights or seller obligations under the SCA.  Exhibit 2.

63. Via the service contract's cancellation clause, the contract includes a provision and/or provisions that violates any clearly established legal right of plaintiffs - a consumer - or responsibility of defendants - a seller, creditor and/or lender - a seller, creditor and/or lender - as established by State law (the TCCWNA) at the time the offer was made and/or the consumer contract was signed or the notice was given or displayed.

64. For, the service contract's cancellation clause states a method of cancellation that conflicts with that mandated by the SCA, which requires the following as to cancellation:  "k. the conditions governing the cancellation of the service contract by the service contract holder, which shall:  (1) permit the contract holder, if the contract holder makes no claim arising under the contract, to cancel the contract: (a) within 10 days of receipt of the contract, or a longer

period specified in the contract, if delivered at the time of purchase; or (b)

within 20 days of the date the contract was sent to the contract holder, or a

longer period specified in the contract, if not delivered at the time of purchase;

and (2) if cancelled within the time period specified in subparagraph (a) or (b)

of paragraph (1) of this subsection, require the provider to provide the contract

holder with the full purchase price or amount paid on the contract by refund or

credit to the account of the contract holder, and to additionally pay the contract

holder a 10% per month penalty, based upon the purchase price of the

contract, if the refund or credit is not completed within 45 days of the

cancellation of the contract…." N.J.S.A. 56:12-93. Exhibit 2.

63. Under the SCA and contrary to the language of the service contract,

defendants use cancellation language that offers a different and lesser type of

refund than that to which consumers are entitled if the service contract is

cancelled in a specific time frame as aforesaid:   "Cancellation by You - Notify

Administrator in writing at the address on the Schedule Page. If We receive

Your Contract and cancellation notice within 30 days of the Contract *purchase*

*date,* We will refund You the full Contract price. If We receive Your Contract

and cancellation notice 30 days alter the *purchase date* but before the *effective*

*date,* We will refund You the full Contract price, less an administrative fee of

10% of the Contract price or $25, whichever is less. If We receive Your

Contract and cancellation notice after the *effective date,* We will refund You

100% of the uneamed pro-rata Contract price, less any claims paid, less an

administrative lee of 10% of the pro-rata Contract price or $25, whichever is

less.  Cancellation by Administrator - If Administrator cancels the Contract 30 days after the purchase date for any reason, Your refund will be based on 100% of the unearned pro·rata Contract price."  Exhibit 2, §9.

64. That language is contrary to the refund and penalty provisions of the SCA, as the SCA provides in relevant part: "if the contract holder makes no claim arising under the contract, to cancel the contract: (a) within 10 days of receipt of the contract, or a longer period specified in the contract, if delivered at the time of purchase; or (b) within 20 days of the date the contract was sent to the contract holder, or a longer period specified in the contract, if not delivered at the time of purchase; and (2) if cancelled within the time period specified in subparagraph (a) or (b) of paragraph (1) of this subsection, require the provider to provide the contract holder with the full purchase price or amount paid on the contract by refund or credit to the account of the contract holder, and to additionally pay the contract holder a 10% per month penalty, based upon the purchase price of the contract, if the refund or credit is not completed within 45 days of the cancellation of the contract...."  N.J.S.A. 56:12-93; Exhibit 2, §9.

65. The service contract's language about cancellation also affirmatively misstates plaintiffs' rights and defendants' responsibilities under the SCA as to the manner of cancelling the contract and omits the language mandated by the SCA about the methods of cancellation and is contrary to the SCA, which provides in relevant part: "A service contract issued, offered for sale, or sold in this State shall be written in a simple, clear, understandable, and easily readable way and shall contain the requirements set forth in this section, as applicable:...l. the

conditions governing cancellation of the service contract by the provider, prior to the expiration of the contract, which shall: (1) require, except as provided in paragraph (2) of this subsection, that the provider mail a written notice to the contract holder at the contract holder's last known address: (a) which contains the reason for the cancellation and the effective date of the cancellation; and (b) is delivered at least five days prior to the effective date of the cancellation; and (2) explain that a written notice shall not be required if the reason for cancellation is nonpayment of the provider fee, a material misrepresentation or omission, or a substantial breach of contractual obligations concerning the property or its use…." N.J.S.A. 56:12-93.

66. As to the manner of cancellation, the service contract's cancellation clause merely states: "Cancellation by You - Notify Administrator in writing at the address on the Schedule Page." The schedule page further states the following: "Do you need additional information or have questions? Please write the Administrator Federal Warranty Service Corporation * P.O. Box 100, Rapid City, SD 57709 or call toll free: 1-800-626-2224. http://www.assurantsolutions.com/privPolGeneral.html." Exhibit 2, §9.

67. The aforesaid language is an affirmative misstatement of the manner of cancellation as mandated by N.J.S.A. 56:12-93 and also, omits language mandated by N.J.S.A. 56:12-93.

68. By misstating consumer rights and seller responsibilities as to the consumer's rights and the seller's responsibilities as to the cancellation refund and penalty provision and as to the manner of cancellation, the contract subverts one of the

crucial purposes of the SCA – to provide mandated disclosures as to the consumer's ability to cancel the service contract and secure a prompt, full refund plus a penalty if that refund isn't timely paid and about the method of cancellation. Exhibit 2, §9.

69. Language such as that used in the contract is confusing to consumers and therefore, is the very type of harm that the SCA and TCCWNA seek to avoid. Exhibit 2, §9.

70. "A violation of the SCA equates with a per se CFA violation. N.J.S.A. 56:12-96.

71. A CFA violation constitutes a violation of a "clearly established legal right" for TCCWNA purposes and therefore, supports liability thereunder. Bosland v. Warnock Dodge, Inc., 396 N.J. Super. 267, 278-79 (App. Div. 2007), aff'd, 197 N.J. 543 (2009); ("a consumer contract that violates a clearly established legal right under the CFA regulations is also a violation of the TCCWNA").

72. Like this case, Bosland involved a seller's violation of a CFA regulation adopted by the DCA. Bosland v. Warnock Dodge, Inc., 396 N.J. Super. 267, 278-79 (App. Div. 2007), aff'd, 197 N.J. 543 (2009).[11]

73. Likewise, when affirming the Appellate Division's decision in Bosland, the New Jersey Supreme Court approvingly noted: "Having concluded that plaintiff's CFA claim should not have been dismissed, the Appellate Division also reinstated her TCCWNA claim, concluding that the complaint's CFA allegations also sufficed to support her claim that the

---

[11] In Bosland, the violation at issue concerned the Automotive Sales Practices regulations, N.J.A.C. 13:45A-26B.1 to -26B.2. See Bosland v. Warnock Dodge, Inc., 396 N.J. Super. 267, 278-79 (App. Div. 2007), aff'd, 197 N.J. 543 (2009).

contract violated a clearly established legal right.  Bosland v. Warnock
Dodge, Inc., 396 N.J. Super. 267, 278 (App. Div. 2007), aff'd, 197 N.J. 543
(2009).

74.   Therefore, where, as here, plaintiffs allege sufficient facts to establish a
violation of a state regulatory provision (i.e., violations of the SCA – which
are in turn per se CFA violations), such allegations are "sufficient to
establish a potential violation of the TCCWNA because a consumer
contract that violates a clearly established legal right . . . is also a violation
of the TCCWNA."  Bosland v. Warnock Dodge, Inc., 396 N.J. Super. 267,
278-79 (App. Div. 2007), aff'd, 197 N.J. 543 (2009); see also United Cons.
Fin. Serv. v. Carbo, 410 N.J. Super. 280, 306 (App. Div. 2009) ("This court
has held that the act of offering a consumer contract that violates a legal
right of a consumer under the law is sufficient to establish a violation of
this statute." (citation omitted)).

75. Because defendants' contract contains terms which violate the SCA, the contract
is one "which includes any provision that violates any clearly established legal
right of a consumer or responsibility of a seller ... as established by State or
Federal law at the time ... plaintiffs contract is signed...."  N.J.S.A. 56:12-15.

76. Therefore, the contract violates TCCWNA.

77.   By giving the contract which includes language that violates plaintiffs'
rights as aforesaid – a violation of plaintiffs' rights, the contract supports a
TCCWNA violation and further, is null and void and unenforceable.

**Facts Supporting Defendants' Violation Of The Truth-In-Consumer Contract,**

**Warranty And Notice Act Predicated On The Language Of The Service Contract**

**That Contains A Savings Clause That Violates Section 16**

78. In violation of section 16, the service contract contains the following clause:  "10.
    Contract Limitations.  Limitation of Liability - To the extent permitted by applicable
    law, the liability of the Obligor, Administrator and Insurer, If any, for any allegedly
    defective Product or part shall be limited to repair or replacement of the Product
    or part and shall not exceed the purchase price of a comparable replacement
    Product or part."  Exhibit 2.

79. The contract does not contain any paragraph or addendum discussing consumer
    rights or seller responsibilities under New Jersey laws or regulations such as the
    New Jersey Uniform Commercial Code. Exhibit 2.

80. Therefore, via the aforesaid savings clause, the contract violates the TCCWNA
    by stating "that any of its provisions is or may be void, unenforceable or
    inapplicable in some jurisdictions without specifying which provisions are or are
    not void, unenforceable or inapplicable within the State of New Jersey...."
    N.J.S.A. 56:12-16.

**Plaintiffs' Counsel Serve As Private Attorneys General**

81.   Plaintiffs hired counsel and one or more statutes pled herein provide for fee
    shifting for parties hiring counsel and prevailing under said statutes.

82.   Accordingly, by representing plaintiffs, plaintiffs' counsel serve plaintiffs as
    private attorneys general.[12]   Otherwise, private claimants (such as those under

---

[12] See *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 150 N.J. 255, 268 (1997).

the consumer protection statutes pled herein) would have to pay attorneys' fees and incur potentially considerable expense for a potentially small recovery.[13]

83.   Since counsel for private fee shifting claimants such as plaintiffs' counsel act as private attorneys general, plaintiffs bringing a private action such as this case may seek the remedy of counsel fees for the statutory violations pled herein not only as those violations affect the named plaintiffs but also for other claimants.[14]

### CLASS ACTION CERTIFICATION ALLEGATIONS

84.   Plaintiffs repeat all paragraphs set forth above as if set forth herein in full.

85.   Plaintiffs bring this action pursuant to Rule 4:32 on behalf of plaintiffs and on behalf of the class members, with the class being composed of a class of all other New Jersey citizens similarly situated to plaintiffs and suffering similar harms.

86.   **Plaintiffs propose a class as follows: all New Jersey citizens who purchased vehicles and received service contracts issued by defendants with the same language as the service contract that defendants issued to plaintiffs for a period of six [6] years prior to the filing of the complaint.**

87.   Defendants' actions are not isolated.

---

[13] See, e.g., *Skeer v. EMK Motors, Inc.*, 187 N.J. Super. 465, 470 (App. Div. 1982)(discussing fee shifting under the CFA); *Chattin v. Cape May Greene, Inc.*, 243 N.J. Super. 590, 610 (App. Div. 1990), aff'd o.b., 124 N.J. 520 (1992) (citing *Coleman v. Fiore Bros.*, Inc., 113 N.J. 594, 598 (1989))(same); *Furst v. Einstein Moomjy*, 182 N.J. 1, 21 (2004)(same).

[14] See, e.g., *Laufer v. U.S. Life Ins. Co. in N.Y.*, 385 N.J. Super. 172, 185 (App. Div. 2006).

88.  Defendants' actions have affected similarly situated individuals throughout the State of New Jersey.

89.  Defendants acted on grounds generally applicable to the class members, thereby justifying relief against defendants for the class members as whole.

90.  Plaintiffs are members of the class that they seek to represent.

91.  The class is believed to number thousands of persons and their joinder is impracticable, except by via a class action.

92.  The disposition of the claims of the class in a class action will benefit both the parties and the Court.

93.  There are questions of law and/or fact common to the class predominating over any question affecting only individual class members as to whether defendants are liable to plaintiffs for violation of New Jersey law.

94.  Class certification is also appropriate because defendants acted on grounds generally applicable to the class, making appropriate equitable injunctive relief with respect to plaintiffs and the class members.

95.  Specifically, plaintiffs seek injunctive relief via a court judgment or order requiring an end to the unlawful practices and/or the issuance of a corrective notice to the class members.

96.  Plaintiffs' claims are typical of the claims of the class insofar as named class representatives and the members of the class were similarly exposed to the statutory harms alleged herein and were similarly injured and/or face similar risks therefrom.

97.   The proposed class representatives state a claim upon which relief can be granted that is typical of the claims of absent class members.   If brought and prosecuted individually, the claims of each class member would necessarily require proof of the same material and substantive facts, rely upon the same remedial theories, and seek the same relief.

98.   Plaintiffs will fairly and adequately represent the interests of the class insofar that the plaintiffs' claims are typical of those of the class members.

99.   Plaintiffs are committed to the vigorous representation of the class members.

100. Plaintiffs retained counsel experienced and skilled in consumer law and class action litigation.

101. Counsel agreed to advance the costs of the litigation contingent upon the outcome.

102. Plaintiffs have no conflict of interest in the maintenance of this class action.

103. If the matter is maintained as a class action, it shall provide for a fair and efficient adjudication of this dispute.

104. The claims and remedial theories pursued by the named class representative are sufficiently aligned with the interests of absent class members to ensure that the individual claims of the class will be prosecuted with diligence and care by the individual plaintiffs as class representatives.

105. Contrawise, especially in view of the small dollar amounts in controversy relative to the individual plaintiffs' claims, it would be impracticable and undesirable for each member of the class who suffered harm to bring a separate action.

106. Further, the maintenance of separate actions in lieu of the instant proposed class action would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications.

107. Contrawise, a single class action such as the instant proposed class action can determine the rights of all class members while economizing judicial resources.

108. Moreover, as plaintiffs invoked consumer protection statutes and have pled a prima facie case for the violation of same, the policy goals behind those consumer protection statutes provide further reason for permitting class action certification of the instant action.

109. The benefits of adjudicating this case via a class action far outweigh any difficulties in management of the case as a class action.

110. Class action treatment of this case is a superior method for the fair and efficient adjudication of this dispute because:

- individual claims by the class members are impractical as the costs of pursuit far exceed what any one plaintiff or class member has at stake;

- as a result, there has been no other litigation over the controversies herein;

- individual members of the class have no interest in prosecuting and controlling separate actions; and

- the proposed class action is manageable.

111. This matter does not invoke CAFA, since the sums sought by the class members and the matter in controversy does not exceed the sum or value of $5,000,000, exclusive of interest and costs.

## COUNT 1

## TCCWNA VIOLATION – AFFIRMATIVE MISSTATEMENT OF SCA

## CONSUMER RIGHTS AND SELLER

## RESPONSIBILITIES – REFUNDS AND PENALTIES

112. Plaintiffs repeat all of the allegations contained in the previous paragraphs as if fully set forth herein.

113. This count is brought on behalf of plaintiffs individually and the class.

114. As stated more fully above, the TCCWNA applies to plaintiffs and the class and defendants and the documents.  N.J.S.A. 56:12-15.

115. **Because the contract affirmatively misstates plaintiffs' rights and defendants' responsibilities under the SCA as to refunds and penalties due a consumer for seller's failure to timely pay a refund as aforesaid, such misconduct is actionable as violations of the TCCWNA - N.J.S.A. 56:12-15.**

116. Via this action, plaintiffs and the class seek relief pursuant to the TCCWNA.

## COUNT 2

## TCCWNA VIOLATION – SAVINGS CLAUSE VIOLATING SECTION 16

117. Plaintiffs repeat all of the allegations contained in the previous paragraphs as if fully set forth herein.

118. This count is brought on behalf of plaintiffs individually and the class.

119. As stated more fully above, the TCCWNA applies to plaintiffs and the class and defendants and the documents.  N.J.S.A. 56:12-15.

120. **Because the contract affirmatively misstates plaintiffs' rights and defendants' responsibilities under the SCA as to the manner of cancelling**

**the contract and omits the language mandated by the SCA about the methods of cancellation as aforesaid, such misconduct is actionable as violations of the TCCWNA - N.J.S.A. 56:12-15.**

121. Via this action, plaintiffs and the class seek relief pursuant to the TCCWNA.

## COUNT 3

## DECLARATORY JUDGMENT

122. Plaintiffs repeat all of the allegations contained in the previous paragraphs as if fully set forth herein.

123. This count is pled on behalf of plaintiffs individually and the class.

124. This count is directed against all defendants.

125. Plaintiffs seek a declaratory judgment that the service contract is contrary to New Jersey law.  See N.J.S.A. 2A:16-59.

126. Pursuant to the Uniform Declaratory Judgments Law, N.J.S.A. 2A:16-50, et seq. (UDJL), relief based on a declaratory judgment may be granted whenever necessary or proper, by application to a court having jurisdiction to grant the relief.

127. The UDJL's purpose is to settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations.   N.J.S.A. 2A:16-51.

128. The UDJL is a remedial device designed to expedite the definitive establishment of private rights and duties thereby forestalling the emergence of costly and cumbersome proceedings. *Middlesex County Sewerage Authority v. Middlesex*, 74 N.J. Super. 591, 181 (Law Div. 1962), affirmed by 79 N.J. Super. 24 (App. Div. 1963).

129. The UDJL is liberally construed and administered, and shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it, and to harmonize, as far as possible, with federal laws, rules and regulations on the subject of declaratory judgments. N.J.S.A. 2A:16-51.

130. Plaintiffs are persons as defined by the UDJL. N.J.S.A. 2A:16-50.

131. Under the UDJL, a person interested under a written contract or other writing constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal lesse, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, lesse, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder. N.J.S.A. 2A:16-53.

132. This matter is ripe for adjudication via the UDJL because there is a justiciable controversy between interested and adverse parties upon facts that are neither future, contingent, nor uncertain.[15]

133. In the proper case such as this one, civil rights plaintiffs are entitled to a declaratory judgment.[16]

## PRAYER FOR RELIEF COMMON TO ALL COUNTS

134. Plaintiffs repeat all of the allegations contained in the previous paragraphs as if fully set forth herein.

---

[15] *New Jersey Mfrs. Ins. Co. v. McDermott*, 201 N.J. Super. 251 (Law Div. 1985).

[16] See *Straut v. Calissi*, 293 F. Supp. 1339 (D.N.J. 1968).

WHEREFORE, plaintiffs demand judgment against all defendants for a statotry award of $100 damages for each TCCWNA violation, attorney's fees, interest and costs of suit and any other legal and equitable relief that the Court deems appropriate, including but not necessarily limited to a declaratory judgment and injunctive relief to end the aforesaid illegal misconduct.

### JURY DEMAND PURSUANT TO R. 4:35-1

Pursuant to R. 4:35-1, relative to all issues pled in the instant action that are so triable, the parties submitting this pleading for filing hereby demand a trial by six (6) jurors.

### DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, **LEWIS G. ADLER, ESQ.** is designated as trial counsel in this matter for the parties submitting this pleading for filing.

### NOTICE PURSUANT TO R. 1:5-1(a) AND R. 4:17-4(c)

Take notice that, pursuant to R. 1:5-1(a) and R. 4:17-4(c), the parties submitting this pleading for filing hereby demand that each party named in the complaint that serves or receives pleadings of any nature (including discovery requests) to or from any other party to the action, forward copies of same along with any documents provided in answer or response thereto to counsel for the parties submitting this pleading for filing and take notice that this is a continuing demand.

### NOTICE PURSUANT TO R. 1:7-1(b)

PLESSE TAKE NOTICE that to the extent applicable to this case, the parties submitting this pleading for filing may, at the time of closing argument, suggest to the trier of fact with the respect to any element of damages, that unliquidated damages be calculated on a time-unit basis, without reference to a specific sum.

## CERTIFICATION PURSUANT TO R. 4:5-1(2) and (3)

Pursuant to R. 4:5-1(2) and (3), LEWIS G. ADLER hereby certifies that:

1. I am an attorney at law of the State of New Jersey.

2. I am counsel for the parties submitting this pleading for filing in this case and am personally familiar with the facts recited herein as a result of my being said counsel and from handling this case for my clients.

3. Plaintiffs intend to file 2 separate suits against the following additional parties relative to the appliance for legal issues different from this case as follows: (1) Johnson's Appliances & Bedding D/B/A Johnson's Electric And D/B/A Johnson's Electric, Appliances & Bedding, 2510 New York Avenue, North Wildwood, New Jersey 08260; and (2) General Electric Company, 4000 Buechel Bank Road, Louisville, Kentucky 40225.

4. With the exception of the aforesaid, upon my initial review of this matter, the matters in controversy in this action are not the subject of any other action pending in any other court or of a pending arbitration proceeding, that no other action or arbitration proceeding is currently contemplated and that I am unaware of any other parties who currently should be joined to this action.

5. Confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with R. 1:38-7(b).

"I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are wilfully false, I am subject to punishment."

DATED: May 11, 2017

Lewis Adler

Page 31 of 32

LEWIS G. ADLER

# COMPLAINT EXHIBIT 1

# *Johnson's* ELECTRIC

phone (609) 522-1421

FAX: (609) 522-1436

## *APPLIANCES & BEDDING*

*26th & New York Avenue*
*North Wildwood, NJ 08260*

*930 Asbury Avenue*
*Ocean City, NJ 08226*
*(609) 399-1598*

```
NEW LAYAWAY PAGE  1
TICKET  3028668   DATE 08/19/14
                  TIME 10:39
DATE NEEDED - 08/19/14
```

THANK YOU FOR SHOPPING
WITH US!

```
SOLD TO:A1-011316              SHIP TO:
ROSE WOTURSKI                  ROSE WOTURSKI
2708 BYBROOK DRIVE             2708 BYBROOK DRIVE

VILLAS            NJ 08251     VILLAS NJ 08251
```

```
THE MERCHANDISE YOU HAVE ORDERED IS    ORG DATE   SALESPERS-JS          PAYMEN
PROMISED TO YOU ON/BEFORE Thu 08/28/14 08/19/14 JERRY STROH             MC
```

| MFR | MODEL NUMBER | PRODUCT DESCRIPTION | QTY. | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| GE | PGS920SEFSS | 30" SLIDE-IN GAS RANGE | 1 | 2279.00 | 2279.00 |
| GE | PFE29PSDSS | REFRIGERATOR/ FRENCH DOOR | 1 | 2299.00 | 2299.00 |
| GE | PVM9195SFSS | OTR MICROWAVE | 1 | 399.00 | 399.00 |
| GE | PDT750SSFSS | DISHWASHER | 1 | 999.00 | 999.00 |
| UL | 1115WCS00 | 15" WINE CAPTAIN-SS | 1 | 1549.00 | 1549.00 |

**The merchandise you have ordered is promised to you on or before _____ . If the merchandise ordered by you is not delivered by the promised delivery date, Johnson's Electric must offer you the choice of,(1) canceling your order with a prompt, full refund of any payments you have made or (2) accepting delivery at a specific later date.**

A service charge of 2% per month will be added to all invoices not paid within 30 days. This amounts to 24% annual rate.
See reverse side for specific conditions of sale.
I accept and have inspected the above listed merchandise, acknowledge responsibility for payment of same and find it to be in satisfactory condition and that it has been received, delivered and installed satisfactorily without injury, incident, or damage to the persons and/or premises.

```
SUBTOTAL.........   7525.00
TAX (WILD 3.500%).   263.40
TOTAL SALE.......   7788.40
DEPOSIT..........-  1000.00
TOTAL AMT DUE.....  6788.40
```

date            name

## CONDITIONS OF SALE

Installation of appliance will only be done if discussed with your salesperson prior to delivery. Installation consists of locating the appliance in place and connecting to existing facilities.  Please note exceptions below:

- Installation to existing facilities does not include supplying/rerouting of wiring or plumbing, nor any carpentry work.

- Built-in appliances, gas appliances, ice makers, dishwashers, hoods, disposals, air conditioners and over the range microwaves are sold as not installed.

- Clothes dryers and vented ranges do not include venting supplies.  Installation does not include a venting system or modification of an existing venting system.

- Johnson's Electric can refuse to connect to any existing facility if in the judgment of the delivery personnel, installation would be unsafe.

- Johnson's Electric at time of delivery will remove one comparable appliance as long as:

  1. Removal will be done only if unit can be reasonably removed by two people.
  2. Johnson's Electric is not responsible for any appliance that is damaged or non-operative after moving.
  3. Built-in appliances must already be disconnected.
  4. In the event that extra labor for removal/installation is needed due to the configuration of the residence, space, entrance or exit, there shall be an additional charge of $75.00 an hour per extra man.

- Merchandise presented for return/exchange must be in or accompanied by complete original packing and enclosures.  Returns/exchanges will be refused on merchandise that, in our judgment, is not in new condition.  In the event that an appliance does not fit or the Buyer decides to exchange the appliance for any reason, the Buyer will be responsible for the additional delivery charge and a restocking charge. Special order merchandise is non-returnable/not exchangeable.

- In the event of a return/exchange of merchandise, there will be a restocking charge of 20% of the invoice which shall be paid prior to the return/exchange.

- Refunds, when approved, will be made via mail, by company check, in no less than 15 days for check and cash sales.

- **All merchandise purchased from Johnson's Electric receives a full manufacturer's warranty. Johnson's Electric makes no express or implied warranty as to the merchantability or fitness for a particular purpose for any merchandise sold.  In the event the merchandise malfunctions, the Buyer is directed to call the manufacturer as required by the warranty.  Johnson's Electric shall not be responsible to make service calls and/or repairs.  If the merchandise can be repaired by the manufacturer, the Buyer is required to take the necessary steps to have the manufacturer repair the merchandise.  If the manufacturer deems the merchandise must be replaced, the manufacturer will notify Johnson's Electric to make the arrangements for the replacement.**

- It is clearly understood between the parties, Johnson's Electric and the Buyer, that title to the said merchandise has not, nor will not pass to the aforementioned Buyer until final payment has been received by Johnson's Electric.  In the event full and final payment is not received by Johnson's Electric, the Buyer authorizes Johnson's Electric to enter Buyer's premises and regain possession of aforesaid merchandise.

- It is the Buyer's responsibility to prepare and secure the property from possible damage that may result from the installation of an appliance, including but not limited to, moving furniture, covering carpets, covering hardwood floors, removing any obstacles, covering stairs, etc. prior to Seller's arrival.

- All orders considered "phoned-in" still subject to all Conditions of Sale stated herein.

| Buyer's Initials |
| --- |

agreement date          name

# COMPLAINT EXHIBIT 2

**Terms and Conditions**

This Contract is not a contract of insurance. Unless otherwise regulated under state law, the contents under this Contract should be interpreted and understood within the meaning of a "service contract" in Public Law #93-637.

1. **Definitions.**
   Contract means these terms and conditions and the Schedule Page.
   Schedule Page means the reverse side of these terms and conditions.
   Obligor means Federal Warranty Service Corporation in all states except FL where UNITED SERVICE PROTECTION, INC. is the Obligor, and OK where Assurant Service Protection, Inc. is the Obligor. The address and phone number for each Obligor is P.O. Box 105689, Atlanta, GA 30348-5689, (770) 763-1000.
   Administrator means Federal Warranty Service Corporation, in all states except FL where UNITED SERVICE PROTECTION, INC. is the Administrator and OK where Assurant Service Protection, Inc. is the Administrator. The address and phone number for each Administrator is P.O. Box 100, Rapid City, SD 57709, 1-800-626-2224.
   Product means an item used for normal, single family, household use and listed on the Schedule Page as covered under this Contract.
   We, Us, & Our mean the Obligor.
   You & Your mean the owner of the Product and this Contract.

2. **Product Coverage Eligibility.**
   New Coverage: Major Appliances & Home Appliances up to 15 years old; Major Electronics up to 10 years old.
   Renewal Coverage: Major Appliances up to 20 years old; Home Appliances up to 15 years old; Major Electronics up to 10 years old.

3. **Product Coverage.** This Contract pays for the labor and parts costs to repair Your Product for problems due to functional part failures. We may use non-original manufacturer parts or re-manufactured parts for the repair. The Schedule Page shows Your Product coverage. We also cover food spoilage from the covered failure of Your refrigerator or freezer up to $100 per appliance over the life of this Contract with proof of loss, and one replacement of Your original remote control with one of comparable functionality.

4. **Deductible.** You will pay the deductible listed on the Schedule Page to Our servicer for each service call per Product. You will not be responsible for deductible charges on repeat service calls completed within 30 days of the original service event for the same issue. Failure to pay the deductible when due may result in the suspension of service.

5. **Coverage Period.** Your coverage term is on the Schedule Page. If a labor end date is not shown, coverage will renew on a monthly basis unless canceled by You. However, We are not obligated to renew this Contract.

6. **Service Location.**
   In-home Service – We will service the Product at the address on the Schedule Page. The Product must be easily accessible to the servicer and removal of the Product for servicing must not require more than one person for safe removal, the use of special equipment, or tools such as ladders, lift trucks or scaffolding. If Your Product must be repaired elsewhere, pick-up and return expenses are covered.
   Carry-in/Mail-in Service – You are responsible for delivering Your Product to and from the authorized repair center. Reasonable mail-in expenses to and from the service location are covered.

7. **For Service.** Call the telephone number on the Schedule Page. Service will be available during regular working hours. If Administrator cannot find a servicer, after You provide Administrator with a written estimate for repair, You may be authorized to obtain service from a servicer near You.

8. **Contract Transfer.** You can assign Your Contract to another person by writing to Administrator at the address on the Schedule Page and sending a $10 check.

9. **Contract Cancellation.**
   Cancellation by You – Notify Administrator in writing at the address on the Schedule Page. If We receive Your Contract and cancellation notice within 30 days of the Contract *purchase date*, We will refund You the full Contract price. If We receive Your Contract and cancellation notice 30 days after the *purchase date* but before the *effective date*, We will refund You the full Contract price, less an administrative fee of 10% of the Contract price or $25, whichever is less. If We receive Your Contract and cancellation notice after the *effective date*, We will refund You 100% of the unearned pro-rata Contract price, less any claims paid, less an administrative fee of 10% of the pro-rata Contract price or $25, whichever is less.
   Cancellation by Administrator – If Administrator cancels the Contract 30 days after the purchase date for any reason, Your refund will be based on 100% of the unearned pro-rata Contract price.

10. **Contract Limitations.**
    Limitation of Liability – To the extent permitted by applicable law, the liability of the Obligor, Administrator and insurer, if any, for any allegedly defective Product or part shall be limited to repair or replacement of the Product or part and shall not exceed the purchase price of a comparable replacement Product or part.
    Home Appliance (HVAC) Limitation - Liability under this Contract shall not exceed $1,000.
    THE PROVISIONS OF THIS CONTRACT ARE YOUR SOLE AND EXCLUSIVE REMEDY WITH RESPECT TO THE PRODUCT(S) COVERED BY THIS CONTRACT. ALL IMPLIED WARRANTIES WITH RESPECT TO THE PRODUCT(S) INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, ARE HEREBY EXPRESSLY EXCLUDED.
    LOOK FIRST TO YOUR MANUFACTURER'S WARRANTY FOR COVERAGE. IF THE MANUFACTURER'S WARRANTY OVERLAPS WITH THIS CONTRACT COVERAGE, THIS CONTRACT EXCLUDES ANY COVERAGE PROVIDED UNDER THE MANUFACTURER'S WARRANTY, HOWEVER, IF IT OVERLAPS, THIS CONTRACT FILLS GAPS IN AND/OR ADDS BENEFITS TO THE MANUFACTURER'S WARRANTY.
    Non-Repairable Products – If Administrator determines that a Product cannot be repaired or the repair is not cost effective, Administrator may either replace the Product with one of like kind, quality, and function, or provide You with an amount equal to the depreciated value based on the Product age. To view the depreciation schedule go to www.serviceprotectionadvantage.com.
    Fulfillment – Provision of depreciated value or product replacement will fulfill Our obligations on Your Product.
    Product Recovery – The unrepaired Product will become the property of Administrator if Administrator elects to recover

We are pleased to provide your Service Contract

ASSURANT®

P.O. Box 100
Rapid City, SD 57709-0100

361450726
Rose Woturski
2708 Bybrook Dr.
Villas, NJ 08251

## Service Contract Schedule Page

Product Location: ROSE WOTURSKI 2708 BYBROOK DR VILLAS, NJ 08251
When You Need Service: Call the number listed below.
You will need to provide your Contract number when requesting service, so please keep this Contract in a safe place.

Purchase Price: $266.55
Deductible: $.00
Contract number: 361450726

| Product/Brand | Model/Serial | Coverage | Phone | Install Date | Coverage Period |
|---|---|---|---|---|---|
| Refrigerator/Top-Freezer / GE | PFE29PSFSS/ND505858 | In Home | 1-800-626-2224 | 09/30/2014 | 10/02/2016-10/02/2017 |
| Microwave Oven / GE | PVM9195SF1SS/LD216898B | In Home | 1-800-626-2224 | 09/30/2014 | 10/02/2016-10/02/2017 |
| dishwasher - built-in / GE | PDT750SSF2SS/LD331410S | In Home | 1-800-626-2224 | 09/30/2014 | 10/02/2016-10/02/2017 |
| Range - Gas / GE | PGS920SF2SS/HD102942P | In Home | 1-800-626-2224 | 09/30/2014 | 10/02/2016-10/02/2017 |

Do you need additional information or have questions? Please write the Administrator:
Federal Warranty Service Corporation • P.O. Box 100 • Rapid City, SD 57709 • or call toll free: 1-800-626-2224
http://www.assurantsolutions.com/privPolCentral.html

the Product at its own expense. If Administrator does not recover the Product, You must dispose of it in compliance with law.

11. **Your Promises and Assurances.** You promise to: (1) fully cooperate with Administrator and servicer during diagnosis and repair of the Product; (2) provide a non-threatening and safe environment with an adult present for in-home service; (3) use the Product only for non-business purposes; (4) provide normal preventative maintenance for the Product; (5) subrogate and assign Your rights of recovery to Us if repair or replacement is provided for which the manufacturer, its agents or suppliers is legally responsible; (6) provide written notice of any defect or deficiency in service within 90 days of discovery; and (7) protect Your covered product against any further damage.

12. **What is Not Covered.**
a. any repair when You have not complied with any part of Section 10; b. products not listed on the Schedule Page; c. consumable items; d. any repair covered by a manufacturer's warranty or recall program, or initiated by the manufacturer; e. any costs associated with or damage caused by failure to follow manufacturer's recommended installation or maintenance; f. unauthorized repairs; g. cosmetic damage; h. damage or failures caused by external factors such as freezing, inadequate plumbing, wiring, power supply, power surge, rust, corrosion, smoke, infestation, negligence, abuse, misuse, acts of God, leaking batteries, display markings, problems with phone lines; i. service delays due to Acts of God, war or other causes beyond Our control; j. defects that existed prior to this Contract purchase; k. service outside the continental USA and Hawaii; l. water filtration systems if water is microbiologically unsafe or of unknown quality without adequate disinfection; m. loss or damage to recording media, software or data, computer viruses, software defects or software generated problems; n. shipping damage due to inadequate packaging by You; o. upgraded, retrofit, or unapproved components; p. TV image burn-in, plasma or LCD panels for minor pixel illumination issues that do not affect overall viewing such as missing pixels, intermittent pixels, or wrong color pixels; q. TV stands or wall mounts; r. removal or re-installation of Products; s. upgrades to comply with regulatory laws; t. HVAC Products located on a rooftop; u. duct work, refrigerant lines, drain lines, or evaporation/condenser coils if rusted or corroded; v. water heater holding or storage tanks, solar water heaters; w. faucets, fixtures, main water lines, valves, foreign plumbing parts, stoppages, water leaks on exposed plumbing exterior to the home; x. repair or replacement of main breaker or busbars, underground or in-the-wall wiring.

13. **Arbitration.** Read the following arbitration provision carefully. It limits certain of Your rights, including Your right to obtain relief or damages through court action.
To begin Arbitration, either You or We must make a written demand to the other party for arbitration. The Arbitration will take place before a single arbitrator. It will be administered in keeping with the Expedited Procedures of the Commercial Arbitration Rules ("Rules") of the American Arbitration Association ("AAA") in effect when the claim is filed. You may get a copy of these AAA's Rules by contacting AAA at 1633 Broadway, 10th Floor, New York, NY 10019, calling (800) 778-7879 or visiting www.adr.org. The filing fees to begin and carry out arbitration will be shared equally between You and Us. This does not prohibit the arbitrator from giving the winning party their fees and expenses of the arbitration. Unless You and We agree, the arbitration will take place in the county and state where You live. The Federal Arbitration Act, 9 U.S.C. § 1, et seq., will govern and not any state law on arbitration.
You agree and understand that this arbitration provision means that You give up Your right to go to court on any claim covered by this provision. You also agree that any arbitration proceeding will only consider Your Claims. Claims by, or on behalf of, other individuals will not be arbitrated in any proceeding that is considering Your Claims. Please refer to the State Disclosures section of this Contract for any added requirements in Your state. In the event this Arbitration provision is not approved by the appropriate state regulatory agency, and/or is stricken, severed, or otherwise deemed unenforceable by a court of competent jurisdiction, You and We specifically agree to waive and forever give up the right to a trial by jury. Instead, in the event any litigation arises between You and Us, any such lawsuit will be tried before a judge, and a jury will not be impaneled or struck.

14.

**Appendix XII-B1**

| | CIVIL CASE INFORMATION STATEMENT (CIS) | FOR USE BY CLERK'S OFFICE ONLY |
|---|---|---|



<table>
<tr>
<td rowspan="2"></td>
<td rowspan="2"><b>CIVIL CASE INFORMATION STATEMENT</b><br>(CIS)<br><br>Use for initial Law Division<br>Civil Part pleadings (not motions) under <i>Rule</i> 4:5-1<br><b>Pleading will be rejected for filing, under <i>Rule</i> 1:5-6(c),<br>if information above the black bar is not completed<br>or attorney's signature is not affixed</b></td>
<td><b>FOR USE BY CLERK'S OFFICE ONLY</b></td>
</tr>
<tr>
<td>PAYMENT TYPE: ☐ CK ☐ CG ☐ CA<br>CHG/CK NO.<br><br>AMOUNT:<br><br>OVERPAYMENT:<br><br>BATCH NUMBER:</td>
</tr>
</table>

| ATTORNEY / PRO SE NAME<br>Lewis Adler; Paul DePetris | TELEPHONE NUMBER<br>(856) 845-1968 | COUNTY OF VENUE<br>Cape May |
|---|---|---|
| FIRM NAME (if applicable)<br>Lewis Adler; Law Office of Paul DePetris | | DOCKET NUMBER (when available)<br>*CPM-L-199-17* |
| OFFICE ADDRESS<br>Lewis G. Adler - 26 Newton Ave., Woodbury, NJ 08096<br>Paul DePetris - 532 Rte. 70 W., 2nd Flr. Cherry Hill, NJ 08002 | | DOCUMENT TYPE<br>Complaint<br><br>JURY DEMAND  ■ YES  ☐ No |

| NAME OF PARTY (e.g., John Doe, Plaintiff)<br>Rose M. Woturski, Individually And On Behalf Of Others Similarly Situated, Plaintiffs | CAPTION<br>Rose M. Woturski, Individually And On Behalf Of Others Similarly Situated v. Federal Warranty Service Corporation |
|---|---|

| CASE TYPE NUMBER<br>(See reverse side for listing)<br>599 | HURRICANE SANDY RELATED?<br>☐ YES  ■ NO | IS THIS A PROFESSIONAL MALPRACTICE CASE?  ☐ YES  ■ NO<br>IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
|---|---|---|
| RELATED CASES PENDING?<br>☐ YES  ■ No | | IF YES, LIST DOCKET NUMBERS |
| DO YOU ANTICIPATE ADDING ANY PARTIES<br>(arising out of same transaction or occurrence)?<br>☐ YES  ■ No | | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known)<br>☐ NONE  ■ UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

| CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION |
|---|

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?<br>■ YES  ☐ No | IF YES, IS THAT RELATIONSHIP:<br>☐ EMPLOYER/EMPLOYEE  ☐ FRIEND/NEIGHBOR  ■ OTHER (explain)<br>☐ FAMILIAL  ☐ BUSINESS  Consumer/Merchant |
|---|---|

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?  ■ YES  ☐ No |
|---|

| USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION<br>Putative class action involving fee shifting statute |
|---|

| | DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?<br>☐ YES  ■ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|---|
| | WILL AN INTERPRETER BE NEEDED?<br>☐ YES  ■ No | IF YES, FOR WHAT LANGUAGE? |

| I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b). |
|---|

ATTORNEY SIGNATURE: