# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROSE M. WOTURSKI, individually and on behalf of others similarly situated, | 1:17-cv-4309 (NLH/KMW) |
| | **OPINION** |
| Plaintiff, | |
| v. | |
| FEDERAL WARRANTY SERVICE CORPORATION, | |
| Defendant. | |

**APPEARANCES**:

LEWIS G. ADLER
LAW OFFICE OF LEWIS ADLER
26 NEWTON AVENUE
WOODBURY, NJ 08096
    On behalf of Plaintiff

JOHN R. VALES
DENTONS US LLP
101 JFK PARKWAY
SHORT HILLS, NJ 07078-2708
    On behalf of Defendant

**HILLMAN, District Judge**

This matter arises under New Jersey's Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A. § 56:12-14 to -18, a remedial consumer statute which allows an aggrieved party to collect either statutory damages or actual damages. Before the Court is Defendant's Motion to Dismiss and

Plaintiff's Cross-Motion to Remand this matter to state court. The Court finding Plaintiff lacks Article III standing, Defendant's motion will be denied and Plaintiff's motion will be granted. Accordingly, this case will be remanded to New Jersey Superior Court.

The Court takes the following facts from Plaintiff's May 18, 2017 Complaint. On August 19, 2014, Plaintiff purchased an appliance from Johnson's Appliances & Bedding. Plaintiff also purchased an accompanying service contract. The Complaint is in three counts. The first two counts allege the service contract contains terms that violated the Service Contract Act (SCA), N.J.S.A. § 56:12-87 to -97. Although there is apparently no private right of action under the SCA, the TCCWNA prohibits a consumer contract that violates "any clearly established legal right of a consumer or responsibility of a seller" under state or federal law.[1] The third count seeks a declaratory judgment that the service contract is contrary to New Jersey law.

Plaintiff filed this action in New Jersey Superior Court on

---

[1] Specifically, Count 1 alleges that the service contract "affirmatively misstates plaintiffs' rights and defendants' responsibilities under the SCA as to refunds and penalties due a consumer for seller's failure to timely pay a refund." Docket No. 1-4, para. 115. Count 2 alleges that the service contract "affirmatively misstates plaintiffs' rights and defendants' responsibilities under the SCA as to the manner of cancelling the contract and omits the language mandated by the SCA about the methods of cancellation." Docket No. 1-4, para. 120.

May 18, 2017 both individually and on behalf of all other New Jersey purchasers of the contract containing the same terms alleged to violate the TCCWNA.  This case was removed to federal court on June 14, 2017.[2]  On June 15, 2017, Defendant filed the pending Motion to Dismiss.  On July 3, 2017, Plaintiff filed her opposition, along with a Cross-Motion to Remand.

Defendant argues Plaintiff lacks Article III standing to sue in federal court.[3]  Plaintiff alleges violations of the TCCWNA.  "The purpose of the TCCWNA . . . is to prevent deceptive practices in consumer contracts by prohibiting the use of illegal terms or warranties in consumer contracts." <u>Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co.</u>, 25 A.3d 1027, 1044 (N.J. 2011).  Plaintiff's claims are based on alleged misstatements of Plaintiff's rights and Defendant's responsibilities.  Significantly, Plaintiff does not plead any

---

[2] Defendant removed this matter based on the complete diversity of the parties both individually and as a class.  28 U.S.C. § 1332.  Plaintiff limits the proposed class to citizens of New Jersey.  Defendant corporation is organized under the laws of the State of Illinois and has its principal place of business in Georgia.  Plaintiff expressly disavows the more liberal minimal diversity standard set forth in the Class Action Fairness Act by disclaiming that the amount in controversy exceeds $5,000,000.  Docket No. 1-4, para. 111.

[3] Plaintiff appears to agree.  Nonetheless, this Court has an obligation to confirm its jurisdiction over this matter, or lack thereof.  <u>Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 716 (1996) ("[F]ederal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress.").

3

kind of injury resulting from such misstatements.  For the reasons that follow, the Court consequently finds Plaintiff does not have Article III standing.

The Constitution confines the power of federal courts as extending only to "Cases" and "Controversies."  Art. III, § 2.  "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  Raines v. Byrd, 521 U.S. 811, 818 (1997) (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 37 (1976)).

> There are three well-recognized elements of Article III standing: First, an "injury in fact," or an "invasion of a legally protected interest" that is "concrete and particularized."  Second, a "causal connection between the injury and the conduct complained of[.]"  And third, a likelihood "that the injury will be redressed by a favorable decision."

In re Horizon Healthcare Servs. Data Breach Litig., 846 F.3d 625, 633 (3d Cir. 2017) (alteration in original) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560, 561 (1992)).  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016).

Spokeo dictates the outcome of this case.  There, the Supreme Court identified that "Congress' role in identifying and

4

elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." Id. at 1549. "[E]ven in the context of a statutory violation," "Article III standing requires a concrete injury." Id. "[B]are procedural violation[s], divorced from any concrete harm" do not satisfy the injury-in-fact requirement. Id. "Stated differently, not every 'bare' violation of a right granted by a statute is inherently injurious. Rather, such a violation must result in a 'concrete' harm." Rubin v. J. Crew Grp., Inc., No. 16-2167, 2017 WL 1170854, at *3 (D.N.J. Mar. 29, 2017).

"Thus, standing based on a violation of a statutorily created right turns on whether such a right is substantive or merely procedural." Id. The District of New Jersey in Rubin found as follows in considering the case law that had emerged in the District of New Jersey since Spokeo:

> [W]hat each of these courts has held is that without an underlying concrete harm, a plaintiff may not base his/her complaint solely on allegations of wrongdoing predicated on TCCWNA violations. To illustrate, if a consumer alleges that the terms and conditions of an online retailer's website violated the TCCWNA by excluding punitive damages in suits, that consumer would not have standing to bring a TCCWNA claim without also asserting an injury inflicted by the retailer that could entitle him/her to punitive damages at the outset. Absent that underlying harm, under Spokeo, the consumer's alleged TCCWNA violation is merely procedural.

5

As Plaintiff has not pleaded a concrete injury, and consequently has not pleaded an injury-in-fact, the Court finds Plaintiff lacks standing.

Typically, this would end the Court's analysis, result in a finding of lack of subject matter jurisdiction, and the Court would remand pursuant to 28 U.S.C. § 1447. 28 U.S.C. § 1447 provides: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." See Giordano v. Wachovia Sec., LLC, No. 06-476, 2006 WL 2177036, at *5 (D.N.J. July 31, 2006) ("[H]aving found lack of standing – and thus lack of subject matter jurisdiction – this Court must remand this case to state court.").

However, Defendant argues this Court should maintain jurisdiction over this matter, ultimately to dismiss it, based on its own standing to assert a defense to Plaintiff's attempt to assert its claims in court. Defendant argues it has its "own Article III interest in compelling [Plaintiff] to arbitrate her claims" based on provisions in the consumer contract that forms the basis for Plaintiff's claims. Defendant argues this Court has "Article III jurisdiction over [Defendant]'s motion to compel arbitration of those claims."

The Court begins by noting that no motion to compel has

been filed by Defendant, nor given the procedural posture of the case has it filed an answer asserting the affirmative defense of an enforceable agreement to arbitrate. Rather, in Defendant's Motion to Dismiss, Defendant asks that "[i]f the Court does not dismiss for lack of subject-matter jurisdiction," that the Court "dismiss the case and compel [Plaintiff] to arbitrate her claims." Defendant argues it "is an aggrieved party entitled to demand arbitration and, accordingly, has Article III standing."

Defendant cites <u>International Primate Protection League v. Administrators of Tulane Educational Fund</u>, 500 U.S. 72 (1991) to support this argument. In that case, the plaintiffs filed suit seeking to enjoin certain experimentations on monkeys and to obtain custody over them. <u>Id.</u> at 75. Originally filed in Louisiana state court, the case was removed to federal court. <u>Id.</u> The district court then granted a preliminary injunction. <u>Id.</u> at 75-76. On appeal before the Fifth Circuit, the defendant argued the plaintiffs "were not entitled to the injunction because they lacked standing to seek protection of the monkeys." <u>Id.</u> at 76. The plaintiffs, however, argued the District Court lacked jurisdiction because removal was improper. <u>Id.</u> The Fifth Circuit found the plaintiffs did not have standing but that removal was proper. <u>Id.</u>

Before the Supreme Court, the defendant argued the plaintiffs lacked standing to contest removal. <u>Id.</u> The

7

defendant's objection was based on the Fifth Circuit's finding that the plaintiffs lacked standing below to seek protection of the monkeys, which the defendant argued meant the plaintiffs also lacked standing to contest removal. Id. at 76-77. The Supreme Court decided:

> Standing does not refer simply to a party's capacity to appear in court. Rather, standing is gauged by the specific common-law, statutory or constitutional claims that a party presents. "Typically, . . . the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted."

Id. at 77 (alteration in original) (quoting Allen v. Wright, 468 U.S. 737, 752 (1984)). The Court found an injury-in-fact, causation, and redressability. Id. It concluded:

> Nothing in the Court of Appeals' decision undermines this conclusion. The court below found that petitioners did not have standing to protest "disruption of their personal relationships with the monkeys," to claim "harm to their 'aesthetic, conservational and environmental interests,'" or to act as advocates for the monkeys' interests. But at no point did the Court of Appeals suggest that [Plaintiff]s' lack of standing to bring these claims interfered with their right to challenge removal. Indeed, it was only after the court rejected petitioners' standing to protect the monkeys that it considered the question whether [defendant]'s removal was proper. [Defendant] argues that, were we also to consider the propriety of removal, "the Court would be resolving the removal question in a context in which the court below specifically found the injury in fact necessary to [the concrete] adverseness [required for standing] to be lacking." We disagree. The "adverseness" necessary to resolving the removal questions is supplied not by petitioners' claims for the monkeys' protection but rather by petitioners' desire to prosecute their claims in state court.

8

Id. at 77-78 (alterations in original) (citations omitted).

In sum, this Court reads International Primate for the rather unremarkable premise that this Court need not find that a plaintiff has Article III standing to separately consider the legal question as to whether removal was appropriate. Compliance with the statutory requirements of removal and consideration of Article III standing are simply distinct legal determinations. This would appear to be a corollary to the well-established rule that the Court retains jurisdiction to determine its jurisdiction. White-Squire v. United States Postal Serv., 592 F.3d 453, 456 (3d Cir. 2010) ("[I]t is familiar law that a federal court always has jurisdiction to determine its own jurisdiction." (quoting United States v. Ruiz, 536 U.S. 622, 628 (2002))). International Primate does not require, or even support, Defendant's argument that its inchoate and unripe claim, outside the current pleadings, that the parties agreed to arbitrate their disputes confers independent subject matter jurisdiction on this Court. The Supreme Court's finding in International Primate that the plaintiff could challenge removal has simply no bearing on the facts in this case.

Further, the two Third Circuit cases cited in Defendant's footnote on page seven are similarly uninstructive. In re

Cendant Corp. Prides Litigation, 243 F.3d 722, 727-28 (3d Cir. 2001) dealt with standing on appeal, and the analysis applied is unhelpful in this case. Pansy v. Borough of Strodusburg, 23 F.3d 772, 777 (3d Cir. 1994) also relied on an established, and irrelevant to this case, rule that "third parties have standing to challenge protective orders and confidentiality orders in an effort to obtain access to information or judicial proceedings."

The cases Defendant cites in support of its "Article III interest in enforcing the[] arbitration rights that exist separate and apart from the claims to be arbitrated" both dealt with a plaintiff who filed suit to compel arbitration. See IBEW, AFL-CIO Local 1245 v. Citizens Telecoms. Co., 549 F.3d 781, 784 (9th Cir. 2008) ("IBEW sued Citizens in the Eastern District of California seeking to compel arbitration."); Republic Bank & Trust Co. v. Kucan, 245 F. App'x 308, 310 (4th Cir. 2007) ("Republic Bank . . . brought this action in federal court, seeking to compel the borrowers to submit their claims to arbitration as required by the loan agreements."). This is not such a case.

Plaintiff, by her own admission, lacks Article III standing to assert her TCCWNA claims in federal court. Her failure to allege a concrete injury-in-fact deprives this Court of subject matter jurisdiction. Any further adjudication of the rights and obligations of the parties by this Court would violate the long

standing constitutional limits on the power of this Court.

Plaintiff's claims of a technical violation of New Jersey consumer laws, alleged violations which she admits have caused her no harm, and her demand for statutory damages for such violations, should be heard in the state court where they were originally filed.[4] Accordingly, this matter will be remanded pursuant to 28 U.S.C. § 1447.[5]

An appropriate Order will be entered.


Date: March 19, 2018      s/ Noel L. Hillman
At Camden, New Jersey      NOEL L. HILLMAN, U.S.D.J.

---

[4] Of course, the state court may hear any claim by Defendant that the parties entered into an enforceable agreement to arbitrate their disputes including the statutory consumer claims asserted by Plaintiff. See Morgan Stanley Dean Witter Reynolds, Inc. v. Gekas, 309 F. Supp. 2d 652, 660 (M.D. Pa. 2004) ("Supreme Court precedent has held that state courts must enforce the FAA to the same extent as federal courts." (citing Volt Info. Scis., Inc. v. Bd. of Trs., 489 U.S. 468, 471 (1989))).

[5] In light of this disposition, this Court need not address Plaintiff's alternative argument that the matter was improvidently removed because of an alleged miscalculation by Defendant of the amount in controversy.